Call the next case please. 3090484 Elmwood Farmers Insurance Company Appointed by Dan Worker v. Charles W. Keyser Jr. All employees by Zachary Powell. Mr. Worker. Good afternoon, your honors. May it please the court, counsel. My name is Dan Worker. I represent the appellant in this case, Elmwood Farmers Insurance Company. As this court is aware, this appeal arises from the trial court's ruling on farmers' homeowners' policy that it was internally ambiguous because the policy itself provided coverage for personal injury for malicious prosecution cases but also excluded intentional torts in the policy. Just briefly, I think it's important to raise the factual scenario which brings this case before the court. The underlying tort case involved a dispute between neighbors, and our insurer, Ms. Stuckel, instituted a criminal trespass proceeding against the plaintiff in the underlying case, Mr. Keyser. Stuckel advised the Joliet Police Department that Mr. Keyser was told that he did not have permission to come on her property, and she filed a written complaint to that effect. As a result of that action, the Will County State's Attorney's Office took criminal proceedings against Mr. Keyser, and those proceedings were dismissed at the trial level based on Mrs. Stuckel's failure to appear in that case. Now, counsel for the Stuckels in this particular declaratory judgment action do not argue that Illinois farmers had a duty to defend in the case based on the fact that Mrs. Stuckel's conduct was not intentional. Rather, it is their position that Illinois farmers' policy provides coverage for intentional acts. And, you know, the trial court ruled that the policy was internally ambiguous on this point in the fact that they provided coverage for what the court characterized as intentional type torts. You know, malicious prosecution, defamation, wrongful entry are all under the personal injury coverage, and as the court referred to them as, you know, intentional type torts. In conjunction with the intentional act exclusion, the court felt that... Why did you put this in the policy? I mean, if you weren't intending to protect people from it. Well, the personal injury coverage is an expanded coverage under a homeowner's policy, and the court needs to keep in mind that this is a personal lines policy. The additional protection is afforded by this policy, for example, in defamation, in trespass cases, and in intentional act cases, where the insured is sued for that conduct and the conduct is something less than intentional. It doesn't fall within the exclusionary language. The insured is provided a defense and could be provided with potential indemnity coverage if it doesn't rise to that level of our exclusionary language. So the coverage affords protection for the insured, and in fact, the court's ruling on the issue that the policy provides coverage for intentional conduct goes against a number of general principles of insurance coverage law in the state of Illinois, as well as Illinois public policy. You know, first of all, there's a rule in Illinois that it's against Illinois public policy to permit insurance for indemnity for intentional torts. It's also a rule in Illinois recognized by the Illinois Supreme Court and the appellate courts in the state that insurance policies are to provide for accidental conduct, for fortuitous events. Why did you put it in the policy? Again, your Honor. What you're telling me is true. Why? Why put it in there at all? Because there are cases where the insured is being sued for conduct that is less than intentional. Reckless conduct. In what kind of notice do you put something like that in your brief? Do you have any cases of non-intentional malicious prosecution? No, your Honor, but what's important in the Swift case, which Justice McMorrow commented on the degree of malice is still an issue in Illinois tort cases. You know, what level she commented on in that dissenting opinion that it was important to note that the degree of malice necessary to establish liability for malicious prosecution and the degree of malice necessary to sustain an award of punitive damages even in that case was not clear in Illinois case law. She went on to look at the Glenn decision, which is a very old Illinois Supreme Court case, and in that case she commented that, again, the level of malice was not to the extent of ill will, hate, or spite necessary to prevail on a case of malicious prosecution. And also the Glenn case looked at Nelson, which is a very old Illinois Supreme Court case, and in that case they commented on the fact that recklessness, reckless disregard of the truth, could equate to malice in that case. You know, there's a number of Illinois cases in the intentional act arena where the courts have looked at conduct that is less than the actual intentional conduct, willful wanting conduct, reckless conduct, gross negligence, and in those cases the courts held that an insurance company has a duty to defend. What's important in this case is it's not disputed by Stupal that her conduct was intentional. In fact, the paragraph 6 in the underlying complaint alleges that she knowingly made a false statement to have this person criminally arrested. You know, that's not the type of conduct that insurance policies are intended to cover, nor the public policy of the state. I'm still having trouble with this. What would you have covered? What conceivably would a malicious prosecution defense be okay with you? Okay. You know, a good example I think is in a recent case that just was decided by the Illinois Supreme Court, Pekin v. Wilson. In that case, the court was asked to look at whether or not a pleading that was pled only in intentional conduct, whether the insurance counterclaim, in that case for self-defense, could be considered by the insurance company. That was a murder case, right? Yes. It was a stabbing case at a bar. I don't think we're talking about criminal conduct here. Well, Your Honor, what's important about that, though, is the insurer in that case argued, I was acting in self-defense when I was being attacked, and that's why I stabbed the individual. And the Illinois Supreme Court in Pekin said, yeah, you're entitled to a defense based on that affirmative counterclaim. The extrinsic facts, true but unpled facts that are alleged in the pleadings which would trigger a duty to defend. So taking that analogy to this case, if the insured in this case was either being sued for a reckless disregard, for the truth of the statements that she made to have this individual arrested, if she filed a counterclaim alleging one of the defenses to the malicious prosecution in that she had probable cause to make the statement or reasonable grounds to make the statement that resulted in the litigation that was brought against the individual. In those cases, Your Honor, I'm suggesting that we would have a defense obligation. And if the conduct alleged and her defense in that case, if those were the pleadings, arose to a level of conduct less than intentional, it would be something that our policy would provide a defense for and ultimately could provide indemnity for. Is malice an element of malicious prosecution? It is one of the elements that have been looked at by the courts, yes. And is malice not intentional? Malice, no. And as a matter of fact, in the cases that we cited in our brief, Your Honor, cases discussed that it could be to the level of reckless disregard for the facts, which is some element less than intentional in the context of insurance. And have you found that these defamation cases or are they malicious prosecution cases? Generally, malicious prosecution cases in what we found in our research. No, I understand. And they're normally combined with the defamation cases, Your Honor. And, you know, a decision that was cited in the cases that we relied on in our briefs, Berlin v. Nathan, 64-03-940, you know, that was the situation in that case. It was a combination of malicious prosecution with the defamation count. And in that case, the court commented, relying on a Louisiana decision, that the conduct for malice could be something less than intentional, that it could be reckless disregard. You know, and there's plenty of Illinois case law in the intentional act arena where they've recognized that the conduct that is something less than intentional conduct may trigger a defense obligation. So the coverage provided by our policy in no way is ambiguous. The policy provides coverage for a defense of malicious prosecution that is something less than intentional conduct. And the defense that the insurer gets is beneficial. You know, as in this case, the trial court ordered that we provide a defense, and we've been defending the insurer in that case. We think the trial court's decision is incorrect because there are no facts pled or raised by the defendant in the underlying court action on our insurer that would even suggest that the conduct was something other than intentional. You know, the court just made a blanket statement to the trial court that all of those coverages that we provide in the personal injury coverage are intentional type torts. And since we have intentional type torts in our policy, the intentional act exclusion makes the policy itself inherently ambiguous. You know, that pronouncement was rejected flatly by the second district in Vigo in a more recent decision. You know, and that's, again, an intentional act case. You know, and all of these cases are relevant, I guess, analogous to this situation because, again, you know, the insurers in those cases are seeking coverage for barbaran fights, stabbings, you know, or the like, which are clearly intentional type torts that they're being sued for. And courts of this state have found that, you know, depending on the pleadings, you're obligated to provide a defense under the insurance policy. You know, and the defense that's provided in those cases, again, is through independent counsel. You know, the intentional act cases raise the issue of coverage counsel. In the case of the insurer, it has the benefit of having their own personal counsel defending them in those actions. But, again, you know, I'd like to bring the court's attention back to this case. There is no pleading, and this case was decided at the pleading stage. There is no pleading on file in the underlying action that alleges that the insurer's conduct was anything other than intended. You know, the allegation in paragraph six of the amended complaint says that the insurer knew the statement she was making was false and that it was intended for that purpose. You know, and that's the guise of the malicious prosecution case that would not be covered under an insurance policy, a homeowner's policy. You know, I'd briefly like to mention some of the cases that were relied on by the trial court in reaching that conclusion. You know, the court cites two, Dixon and Cincinnati, and what I'd like the court to pay attention to in those cases is first their commercial cases, their commercial policies. You know, Dixon involved a retaliatory discharge case, and, you know, in that case, the language of the insurance policy was much different than the language in our policy. In Dixon, the court looked at personal injury coverage that within the coverage grant excluded actual malice. So they said we're providing coverage to you for personal injury, but we won't where the actions are actual, contain actual malice on the part of the insurer. So the court looked at whether or not retaliatory discharge in that case required actual malice. And then the court went into a pretty detailed analysis about actual malice versus general malice, and they held that the retaliatory discharge claim in that case did not require actual malice, and that's why they found it defense. When the court in those two cases, Dixon and Cincinnati, commented on the public policy of the state, they looked at it from a commercial situation. You know, it's much different in the state of Illinois when an employer, for example, is called upon to pay for an intentional tort of one of their employees. You know, Scott versus Instaparking recognizes that in the state it's not against public policy to insure for punitive damages in a vicarious liability situation, but it is in an individual capacity. So, you know, those cases I find not to be anywhere near on point with the case before this court. The public policy considerations for individuals and the pronouncement that we have under general public policy pronouncements in the case law are very clear when they apply to individuals. You know, the courts clearly say that an individual insured cannot determine the outcome by intentional conduct because it would defeat the purpose of insurance. You know, insurance is to provide for fortuitous defense. The Cincinnati case, also relied on by the court, again, a commercial policy, did not even have an intentional act exclusion. In that case, it was an advertising injury case, and the court was called upon to look at the fortuitous doctrine. You know, the pronouncement that insurance policies are only to cover accidents. In rejecting that argument by counsel, again, I think the court was persuaded by the public policy considerations of commercial policy rather than a personal alliance policy, which we have here. Ultimately, if this court were to uphold the ruling of the trial court, I think it would have a chilling effect in the insurance industry in that insurers would be compelled, I think, to rewrite their policies to take out that coverage because it is against public policy of this state to insure against intentional conduct, and that was never the intent by providing this coverage, this expanded coverage in these homeowner's policies. You know, and by limiting that coverage, you take a benefit away from the insurer that they purchased for their lawfully accused. As the court will recall, I mean, there's numbers of cases with regard to the duty to defend that say that, you know, an insurer has a duty to defend them if the allegations of the complaint are false, friendless, fragile. Okay? You know, these are the types of cases that warrant that type of protection at a higher level under a homeowner's policy. Thank you very much, Mr. Worker. Did you have a question? No, I'm sorry. And Mr. Pollack? Thank you. Counsel? May it please the Court? Good afternoon. My name is Zach Pollack. I represent Ms. Stucco. The trial court in this case made the proper decision. They looked at the policy, saw that in Section 2 of the policy, there was explicit coverage for, among other torts, malicious prosecution. Malicious prosecution is a case, or excuse me, is a claim that requires the proof of malice. Malice specifically requires intent. The Court reviewed the policy and found later that there is an exclusionary policy that the State Farm tries to rely on. The Court said because the exclusionary policy prohibiting intentional coverage for intentional intent conflicted with the coverage for malicious prosecution, there was an ambiguity. And when there's an ambiguity, the case law and the established law of the State requires that that ambiguity be resolved in favor of the insurer. In addition to that, there's a higher burden placed on insurance companies when they're relying on exclusionary policies. And that's because, one, you have an insured party in an individual's case basically looking for coverage. They go through the policy, they see something, they think they're covered for it, but there's an exclusionary policy later. If that's at all ambiguous, the insurance company is required to prove that it really doesn't take away that coverage. Secondly, the insurance company is in control of these policies. They're the ones who originally write them. You've got a situation where you're asserting a malicious prosecution protection but then taking away coverage for any intentional acts, and it results in a situation where you're giving protection in one sentence, taking it away in the other. It's an ambiguity, and it has to be resolved in favor of the insured, and the trial court powerfully did so in this case. Now, as far as malicious prosecution is concerned, counsel has made some insinuations that that can be done with reckless conduct and I respectfully disagree. When you have a case where malice is required, it requires intent. And the Illinois Supreme Court in Dixon Distributing v. Hanover Insurance held that malice requires intent plus. It requires that they intentionally act as well as intend that there's some harmful result from that action. So to suggest that you can have malicious prosecution without intent, I just don't think that exists. So I don't think there's any situation where you have a malicious prosecution claim under Illinois law that would be covered by this policy. So, again, I think there's an ambiguity, and I think it has to be resolved in favor of the insured. Now, State Farm says some other cases where there were exclusionary policies, but they said it was okay because the alleged claims there were made for conduct which could be less than intentional. It was defamation. And the fact is you can have defamation with reckless conduct. Some of those cases still found that coverage was still required. There's two Seventh Circuit cases, Hirschfeld Engineers v. Commercial Union and Tay's Fuel Home v. Ohio Casualty. Both of those cases held that there was an ambiguity when the policies in question listed the alleged torts which were liable, slander, and defamation, but there was a similar exclusionary policy for intentional conduct. And even though those torts can be based on less than intentional conduct, the courts still found that there was coverage required because there was an ambiguity, and you always resolve the ambiguity in favor of the insured. Tell us about these public policy arguments that the State submits. Public policy, again, I've got to go back to the Dixon decision. The Dixon decision, this report, they said that although there is a general public policy against indemnifying individuals for intentional actions, that's not in every case. I mean, you do have situations where you are allowed to contract out to indemnify third parties. Civil rights cases, you know, cops are covered by insurance under the municipality even when they commit intentional acts. So I don't think there's a blanket prohibition on indemnifying others for intentional acts. And in this case, I don't think that the public policy overrides the ambiguity in the case. I think there's other considerations, including there are some other public policies which some of the other cases do go into. There's public policy favoring compensating third parties that are hurt. There's public policy that you don't want to leave an injured party without remedy. So I think that when they rely on public policy, it's almost kind of a last-ditch effort when the facts of the case, the established law in the case, really do not go their way. And I think it's interesting that in a lot of the cases where the courts did find that it was contrary to indemnifying individuals for intentional acts, those were violent cases. You had a case where there was a sexual assault involved. You had a case where there was a murder involved. You had a case where there was a stabbing involved. So I think that public policy tends to be applied more when there's violent acts being identified. In this case, I just don't think that the public policy in question overrides the case law that's been established or the fact that you have an insured here who is applying for coverage, sees that a malicious prosecution is covered, and then later has that taken away by a reading of an exclusionary clause and several other definition sections to say, no, we can't cover you because you have the potential. And I think that that's really the crux of the case. You have an ambiguity in a contract that an individual signed and contracted for insurance. And the reason the case law is developed and favors resolving those ambiguities in favor of the insurance is because you have a situation where you've got an individual, a layperson, contracting with a big insurance company that has the ability to write the contracts. It also has experience with the contracts. So you've got a situation where you have a fairly sophisticated party and a normal person, and the courts realize that, although you obviously have the individual responsibility to read your contract, those individuals aren't always going to be sophisticated enough to determine the nuances of these contracts. So in cases like this where you have a case where there's no possible way that this insurance policy could cover malicious prosecution because it requires intentional contact or intentional conduct, you've got a situation where you don't want to leave the insured who's contracted for coverage of this certain type of action out in full. And based on the general policy towards favoring the insured in these situations, I think the trial court did make an appropriate ruling, and I do believe that the appeal should be denied. Do you have any other questions? Thank you. Thank you, Mr. Malik. Mr. Worker, any rebuttal? Briefly, Your Honors, with regard to the public policy argument, the examples that counsel gave, again, are in the commercial context, which are much different than a personal lines issue. And the degree of culpability of the act, I don't believe, is a definitive line test by any court on the public policy issue. You know, why is Ms. Stuckel's conduct where she intentionally, falsely accuses her neighbor and has them arrested for a criminal act that she knows is untrue any different from the person in a bar fight that stabbed somebody else? You know, I think it's the nature of the conduct that's important when the courts look at whether or not insurance should cover these types of acts. With regard to the ambiguity, there has to be an ambiguity in the policy in order for those rules to apply. There is no ambiguity here. The policy provides coverage for malicious prosecution. And if you look at the elements of malicious prosecution, and I disagree with counsel, I believe Glenn and Nelson, which were reaffirmed by the Supreme Court later on in 1996, clearly state that intent is not a necessary element of malice per se. In those cases where intent is shown, those are the cases where it's expressed malice. And in expressed malice cases, more punitive damages. And that's a distinction that's drawn by the courts. And again, I'm going to bring the court's attention to Justice McMurrow's statements in her dissent that the degrees of culpability for malice had not, as of 1996, and from our research recently, haven't shown any cases after that point that discuss the level of malice that's required to sustain a malicious prosecution case. In fact, the case law on malicious prosecution, when they look at that issue, infer intent or infer malice where the defendant in the case cannot show good cause or justifiable cause or reasonable grounds for bringing the action. So the courts infer that conduct. Again, the comments in the case law in Illinois recognize a reckless disregard standard, which is something less than intentional conduct. So we believe that the policy is clear. In providing coverage for those types of torts in the case, VAGO recognizes that the extension of first sentence coverage. So that's where the level of conduct is to be ratcheted. It's in the elements of the cause of action, Your Honor. If the element of the cause of action requires intent, per se, that would clearly fall within the intentional lack of intent. But wouldn't that be normally pled? Yes. The duty to defend is determined from the allegations of the complaint. So, I mean, what you're saying is, I mean, it seems to me that you're putting this in the policy and then coming to us, ask us to take it out. No, we're not suggesting that at all. We're downing a bright line about where that line is drawn. I understand what you're saying about going to the underlying line. There is a bright line. I mean, there's a number of Illinois cases that interpret when the intentional lack of exclusion applies and when the duty to defend arising from that conduct takes place. And in most of those cases where it's pled that the conduct is intentional in one count and where it may be something less than intentional, willful wanton, reckless disregard, whatever the case may be, in those cases the courts consistently have held that the insurance company has a duty to defend. And the courts have also held in those circumstances that it would be pretty sure to determine the issue of whether or not the conduct was intentional because that's an issue in the tort case to decide. You know, unless the level of conduct arises, for example, under Allstate v. Carioto or Baystate v. Wilson, to the level of such conduct that reasonable people could not disagree that the conduct itself was intentional, in those cases the courts allow a determination of whether or not the intentional lack of exclusion applies before the determination of the underlying tort case.  We don't have any allegation of any conduct in that underlying tort complaint that is pled less than intentional conduct. So we have a singular allegation knowing false statement to establish a malicious prosecution case. Now, for example, if they would have pled in a two-count complaint, for example, that the insured made this knowingly false statement, or in count two that she relied on faulty information and she was grossly negligent in making that statement, reckless disregard to go out and find the truth in that case, that may trigger a duty to defend under this policy. Now, again, in order to have an ambiguity, the policy has to be ambiguous with regard to a reasonable interpretation. What the court has said is that there's an internal inconsistency in the policy. And the way that the court did it was following federal court cases that had been specifically rejected in Illinois under VAGRA by saying that these intentional type torts, as a matter of law, require intent that would take it outside of the coverage of the intentional act exclusion, thereby providing no coverage. And what I'm suggesting to this court is that is not the case. The defamation examples, you know, a person could defame somebody by making a statement, by repeating something they heard, not intending to defame them. And the courts in those cases have said that there's a potential coverage under VAGRA. Thank you for your time. Thank you, Mr. Worker, and thank you both for your arguments today. We will take this matter under advisement. We'll get back to you with a written disposition within a short bit.